FILED
2021 Mar-31  AM 09:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# MIDDLE DIVISION

| | |
|---|---|
| **CHRISTINA LYNN DUBOSE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Case No.: 4:20-cv-00760-ACA |
| } | |
| **SOCIAL SECURITY** } | |
| **ADMINISTRATION,** } | |
| **COMMISSIONER,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OPINION

Plaintiff Christina Lynn Dubose appeals the decision of the Commissioner of Social Security denying her claim for a period of disability and disability insurance benefits. Based on the court's review of the administrative record and the parties' briefs, the court **WILL AFFIRM** the Commissioner's decision.

## I.  PROCEDURAL HISTORY

On June 26, 2017, Ms. Dubose applied for a period of disability and disability insurance benefits, alleging that her disability began on May 31, 2015. (R. at 87, 225–26). The Commissioner initially denied Ms. Dubose's claim (*id.* at 152), and Ms. Dubose requested a hearing before an Administrative Law Judge ("ALJ") (*see id.* at 160). After holding a hearing (r. at 102–136), the ALJ issued an unfavorable

decision (*id.* at 87–97). The Appeals Council denied Ms. Dubose's request for review (*id.* at 1), making the Commissioner's decision final and ripe for the court's judicial review, 42 U.S.C § 405(g).

## II.   STANDARD OF REVIEW

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The court "must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation marks omitted). "Under the substantial evidence standard, this court will affirm the ALJ's decision if there exists such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (quotation marks omitted). The court may not "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (quotation marks omitted). The court must affirm "[e]ven if the evidence preponderates against the Commissioner's findings." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004) (quotation marks omitted).

Despite the deferential standard for review of claims, the court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Henry*, 802 F.3d at 1267 (quotation marks

omitted). Moreover, the court must reverse the Commissioner's decision if the ALJ does not apply the correct legal standards. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145–46 (11th Cir. 1991).

### III. ALJ'S DECISION

To determine whether an individual is disabled, an ALJ follows a five-step sequential evaluation process. The ALJ considers:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178.

Here, the ALJ determined that Ms. Dubose had not engaged in substantial gainful activity since her alleged onset date of May 31, 2015. (R. at 89). The ALJ found that Ms. Dubose's degenerative disc disease, peripheral neuropathy, asthma, and interstitial cystitis were severe impairments, but that her lupus, asthma, hypothyroidism, mitral valve prolapse, obesity, monoarticular arthritis of the right foot, biliary colic, fatigue, and gout were non-severe impairments. (R. 89). The ALJ also found that Ms. Dubose's fibromyalgia was not a medically determinable impairment. (*Id.* at 90). The ALJ then concluded that Ms. Dubose does not suffer

3

from an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.*).

After considering the evidence of record, the ALJ determined that Ms. Dubose had the residual functional capacity to perform light work except that she faced some additional physical and environmental limitations. (R. at 90–91). Based on this residual functional capacity and the testimony of a vocational expert, the ALJ found that jobs existed in the national economy that Ms. Dubose could perform, including ticket seller, booth cashier, and office helper. (*Id.* at 96–97). Accordingly, the ALJ determined that Ms. Dubose has not been under a disability, as defined in the Social Security Act, from her alleged onset date through the date of the decision. (*Id.* at 97).

## IV.  DISCUSSION

Ms. Dubose argues that the court should reverse and remand the Commissioner's decision for two reasons: (1) the ALJ did not properly evaluate the opinion of consultative examiner Dr. Anand Iyer and (2) the ALJ's decision is not supported by substantial evidence because the hypothetical that he posed to the vocational expert was incomplete. (Doc. 11 at 11–24). The court examines each issue in turn.

1.     Evaluation of Dr. Iyer's Opinion

Ms. Dubose's first argument is that the ALJ did not properly consider the opinion of the Commissioner's consultative physician, Dr. Iyer.  (Doc. 11 at 11–21).

Dr. Iyer examined Ms. Dubose on one occasion and opined that she "may have some impairment of functions involving: sitting, standing, walking, climbing steps, bending, lifting, twisting, carrying, [and] reaching overhead."  (R. 712).  Dr. Iyer also concluded that Ms. Dubose "does not have significant limitation of functions involving: handling, hearing and speaking."  (*Id.*).

The ALJ found Dr. Iyer's opinion only "somewhat persuasive."  (R. 95).  The ALJ explained:

> In doing so, I note the opinion lacks specific vocationally relevant language which makes it difficult to ascertain the physician's exact opinion about the claimant's ability to engage in work related activity; however, I find the assessment is consistent with a one time exam. Indeed, the indication that the claimant may have difficulty with sitting, standing, walking, climbing steps, bending, lifting, twisting, and carrying is supported and consistent with the longitudinal record of evidence. More specifically, the actual exam performed by the physician was primarily normal with only a few notations such as pain with range of motion and decreased sensation in her feet; however, the longitudinal record of evidence noting degenerative disc disease with neuropathy, including, but not limited to, tenderness to palpation, muscle spasms, decreased range of motion, and decreased sensation is certainly broadly consistent with the noted possible limitations. However, having said that, I find, despite the notation about pain with range of motion in the claimant's neck, that the longitudinal record of evidence does not support overhead reaching limitations.  Indeed, the claimant did not report any limitations with regard to reaching in her function report or at the hearing.

(*Id.*). Ms. Dubose challenges the ALJ's evaluation of Dr. Iyer's opinion on two specific grounds.

First, Ms. Dubose contends that it was improper for the ALJ to find Dr. Iyer's opinion only somewhat persuasive based on the fact that the opinion lacked specific vocationally relevant language. (Doc. 11 at 11). The regulations governing how the Commissioner evaluates medical opinions changed for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c (2017). Because Ms. Dubose filed her application for benefits in June 2017, the Commissioner argues that the new regulations apply to the ALJ's consideration of Ms. Dubose's claim. (Doc. 12 at 6–15). Although Ms. Dubose claims that the new regulations do not impact the ALJ's obligation to seek additional information from a medical source, she does not challenge the applicability of the new regulations to the ALJ's review of Dr. Iyer's opinion. (*See generally* doc. 11 at 11–21; doc. 13 at 2–4). Therefore, the court assumes that the new regulations control the analysis.

Under the revised regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s). . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ considers the persuasiveness of a medical opinion using the following five factors: (1) supportability; (2) consistency; (3) the relationship with the claimant, including the length of the treatment relationship, the frequency of examinations, and the purpose and extent of the

treatment relationship; (4) specialization; and (5) other factors, including evidence showing the medical source has familiarity with other evidence or an understanding of the Social Security Administration's policies and evidentiary requirements. *Id.* at § 404.1520c(c). Supportability and consistency are the most important factors, and therefore, the ALJ must explain how he considered those factors. *Id.* at § 404.1520c(b)(2). The ALJ may, but is not required to, explain how he considered the other factors. *Id.*

Here, the ALJ properly evaluated Dr. Iyer's opinion under the relevant factors. The ALJ noted that Dr. Iyer was a one-time examiner, and the ALJ explained why some of Dr. Iyer's conclusions were consistent with and supported by the one-time exam and the longitudinal record of evidence and why other of Dr. Iyer's conclusions were not. (R. at 95). Accordingly, the court finds that substantial evidence supports the ALJ's decision to find Dr. Iyer's opinion somewhat persuasive.

Citing *McClurkin v. SSA*, 625 F. App'x 960 (11th Cir. 2015), Ms. Dubose argues that the ALJ "failed to state with at least 'some measure of clarity' the grounds for his decision in repudiating the opinion of an examining physician. (Doc. 11 at 14) (emphasis omitted). But the ALJ's paragraph long, detailed explanation for why he found Dr. Iyer's opinion somewhat persuasive belies Ms. Dubose's position. (*See* R. 95).

Ms. Dubose also argues that the court should find that the ALJ improperly evaluated Dr. Iyer's opinion based on the Seventh Circuit's "degree of suspicion" standard adopted in *Wilder v. Chater*, 64 F. 3d 335 (7th Cir. 1995). (Doc. 11 at 15–21). The Eleventh Circuit has not adopted this standard. Therefore, this court will not follow it either. But even if *Wilder* were controlling, *Wilder* is distinguishable from the facts of this case. In *Wilder*, the consulting physician's opinion was the only evidence of the claimant's impairments. *Wilder*, 64 F.3d at 337–38. Here, the record contains other evidence and opinions about Ms. Dubose's physical limitations. (*See* R. 310–884). Accordingly, *Wilder* does not assist Ms. Dubose. *See Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 685 (11th Cir. 2019) (explaining that *Wilder* is inapposite where the ALJ does not reject the only medical evidence about a claimant's impairments).

To the extent Ms. Dubose contends that the ALJ substituted his opinion for that of Dr. Iyer (*see* doc. 11 at 13–14), Ms. Dubose cites a number of cases that stand for this general proposition, but she advances no specific argument regarding how the ALJ did so in this case. Nevertheless, although an ALJ "may not make medical findings" himself, the ALJ's responsibility is "to resolve conflicting medical opinions." *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 543 (11th Cir. 2016) (finding that "the ALJ did not usurp the role of a physician" by weighing the

credibility of a medical expert's opinion "in light of other record evidence"). And that is what the ALJ did here.

Second, Ms. Dubose argues that if the ALJ was dissatisfied with Dr. Iyer's opinion because it did not contain specific vocationally relevant language, then the ALJ should have recontacted Dr. Iyer. (Doc. 11 at 11–13). If a consultative report is inadequate or incomplete, the ALJ will contact the physician and ask the physician to provide the missing information or a revised report. *See* 20 C.F.R. § 416.919p(b). But nothing in the regulations requires a consultative examiner to describe his opinion about a claimant's limitations in vocationally relevant language. *See* 20 C.F.R. § 416.919n. And in fact, "the absence of a medical opinion in a consultative examination report will not make the report incomplete." *Id.* (citing 20 C.F.R. § 416.913(a)(2)). Accordingly, the court finds that the ALJ was not required to recontact Dr. Iyer.

Moreover, whether remand is required where an ALJ does not recontact a medical source depends on "whether the record reveals evidentiary gaps which result in unfairness or clear prejudice." *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir. 1995) (quotations omitted). Here, the ALJ did not discount Ms. Dubose's limitations that Dr. Iyer identified. Rather, the ALJ concluded that the longitudinal medical evidence supported Dr. Iyer's opinion that Ms. Dubose had some difficulty sitting, standing, walking, climbing steps, bending, lifting, twisting, and carrying. (R. 95).

9

And the ALJ accounted for a number of the limitations in Ms. Dubose's residual functional capacity.  (*See id.* at 90–91).

In sum, the court finds that substantial evidence supports the ALJ's evaluation of Dr. Iyer's opinion, and the ALJ did not err in failing to recontact Dr. Iyer to clarify his consultative examination report.

2. <u>Vocational Expert Hypothetical</u>

Ms. Dubose's second argument is that the ALJ's decision is not based on substantial evidence because the ALJ's hypothetical question to the vocational expert assumed that Ms. Dubose could perform medium work and did not account for all of Ms. Dubose's impairments and limitations.  (Doc. 11 at 23–24).

As an initial matter, Ms. Dubose does not identify what additional impairments or limitations the ALJ should have included in the hypothetical question to the vocational expert.  (*See id.*).

In addition, Ms. Dubose's argument operates from the faulty premise that the ALJ relied on the vocational expert's testimony in response to a hypothetical question that assumed Ms. Dubose could perform medium work.  (*Id.* at 21).  The hearing transcript is clear that the ALJ asked the vocational a series of hypothetical questions.  First, the ALJ asked the vocational expert questions about a hypothetical individual who could perform medium work.  (R. 131–32).  The ALJ then modified the hypothetical and posed a number of questions to the vocational expert, asking

the vocational expert to assume that the individual could perform light work. (*Id.* at 133–35). In response to these questions concerning light work, the vocational expert testified that the hypothetical individual could perform various jobs, including ticket seller, cashier, and office helper. (*Id.* at 133–34). The ALJ accepted the vocational expert's testimony about the hypothetical individual who could perform light work (*see* r. 96–97), and Ms. Dubose does not challenge the vocational expert's testimony in that regard.

Accordingly, the court finds no error with the ALJ's reliance on the vocational expert's testimony.

## V.   CONCLUSION

Substantial evidence supports the ALJ's denial of Ms. Dubose's applications for a period of disability and disability insurance benefits. Therefore, the court **WILL AFFIRM** the Commissioner's decision.

The court will enter a separate order consistent with this memorandum opinion.

**DONE** and **ORDERED** this March 31, 2021.

_____
**ANNEMARIE CARNEY AXON**
UNITED STATES DISTRICT JUDGE